IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| HELEN HOLIDAY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| NANCY A. BERRYHILL, | : |
| Acting Commissioner, | : |
| Social Security Administration, | : |
| | : |
| Defendant. | : |

Action No. 2:17cv90

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Helen Holiday's ("Plaintiff") complaint filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant, Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff filed a Motion for Summary Judgment, ECF No. 11, and Defendant filed a cross-Motion for Summary Judgment, ECF No. 13, which are now ready for recommended disposition. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 11, be **GRANTED**,

that the Commissioner's Motion for Summary Judgment, ECF No. 13, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED** for proceedings and analysis consistent with this Report.

## I. PROCEDURAL BACKGROUND

On February 21, 2013, Plaintiff initially filed her application for SSI, alleging disability due to psychosis, mood disorder, anxiety disorder, bilateral knee disorder, and fibromyalgia, with an onset date of February 14, 2013.[1]  R. at 13.[2]  Her application was initially denied on June 20, 2013, and again denied upon reconsideration on January 24, 2014.  R. at 13.  On March 19, 2014, Plaintiff requested a hearing before of an administrative law judge, which was conducted on September 22, 2015. R. at 13, 31-60. The administrative law judge, Judge Irving A. Pianin ("the ALJ") issued a decision denying Plaintiff's SSI application on October 2, 2015.  R. at 13-22.  On January 20, 2017, the Appeals Council denied Plaintiff's request for review because the ALJ's decision was supported by substantial evidence and Plaintiff's claims did not warrant review, making the ALJ's decision the Commissioner's final decision.  R. at 1-3.

Having exhausted her administrative remedies, Plaintiff filed the instant complaint for judicial review of the Commissioner's decision on February 14, 2017.  ECF No. 3.  The Commissioner filed an Answer on April 21, 2017.  ECF No. 7.  The matter was referred to the undersigned U.S. Magistrate Judge on May 24, 2017.  ECF No. 9.  Plaintiff filed her Motion for Summary Judgment on June 23, 2017, ECF No. 11, and the Commissioner filed a Cross-Motion for Summary Judgment and a Memorandum in Support on July 24, 2017, ECF Nos. 13-14.  The motions are now ripe for recommended disposition.

---

[1] At the hearing, the original onset of disability date was amended to March 20, 2014.  R. at 32.
[2] "R." refers to the certified administrative record that was filed under seal on April 21, 2017,  ECF No. 8, pursuant to Local Civil Rules 5(B) and 7(C)(1).

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff's initial disability application alleged her physical disability onset date was February 14, 2013, and did not allege disability due to mental health impairments. R. at 72. *See also* ECF No. 14 at 4. After Plaintiff's application was denied at the initial level, Plaintiff alleged mental health impairments, including sleep disturbances, depression, concentration impairment, and nervousness, with an onset date of June 15, 2013. R. at 91.[3] In her Motion for Summary Judgment Plaintiff abandons her claim for disability pursuant to physical impairments. ECF No. 12 at 6. Accordingly, the Court's review will focus exclusively on Plaintiff's alleged disability due to mental health impairments. *See* ECF No. 14 at 5 n.1 (citing *Buffington v. Baltimore Cty., Md.*, 913 F.2d 113, 121 (4th Cir. 1990) (citing 9 J. Moore & B. Ward, Moore's Federal Practice, ¶ 228.02[2.–1] (1990) (appellant must raise all issues he wishes to be considered in his initial brief); *Mississippi River Corp. v. FTC*, 454 F.2d 1083, 1093 (8th Cir. 1972) (error relied on should not be asserted for the first time in the reply brief))).

Plaintiff was born on January 22, 1968, and was forty-five (45) years old at the alleged June 15, 2013 onset of Plaintiff's mental health limitations. R. at 91, 190. Plaintiff completed the ninth grade, obtained a G.E.D in 1984, and completed approximately six months of nursing school in 2010. R. at 33-34. On September 22, 2015, Plaintiff appeared with counsel, Robert W. Gillikin, II, and testified before the ALJ at the administrative hearing. R. at 31-60. Barbara Byers, a certified Vocational Expert ("VE") also appeared and testified. R. at 29, 56-58.

On March 11, 2014, Plaintiff began receiving psychiatric treatment for her mental health issues at the Adult Outpatient Services ("Pembroke") in Virginia Beach. ECF No. 12 at 3. According to Plaintiff, this resource is a "community services board" for insured residents of

---

[3] The initial application and reconsideration determinations were made prior to Plaintiff's commencement of psychiatric treatment on March 11, 2014. ECF No.

Virginia Beach who require ongoing psychiatric treatment for patients who are approved for "GAP" coverage, which is a limited form of Medicaid that covers only mental treatment and medications. ECF No. 12 at 3-4 n.1. Through Pembroke, Plaintiff has been under the care of Dr. Louis Leone, III ("Dr. Leone"), a psychiatrist, who has prescribed Plaintiff medications such as Cogentin (to treat psychosis and psychotic features), Risperdal (an anti-psychotic used in cases of bipolar disorder, schizophrenia, and/or anxiety), and lithium "to help with mood problems." R. at 653. *See also* ECF No. 12 at 4 nn. 2-3. When Plaintiff first presented to Pembroke in March 2014 for her intake assessment, she complained of crying, feeling out of place, nightmares, discomfort with crowds, and hallucinations of the auditory and visual variety. R. at 692, 653. Plaintiff reported that she had been experiencing such symptoms for approximately one month prior to intake. R. at 692. At her intake appointment, Plaintiff was diagnosed with (1) Psychotic Disorder, Not Otherwise Specified, (2) Depressive Disorder, Not Otherwise Specified, and (3) Anxiety Disorder, Not Otherwise Specified. R. at 683. Plaintiff has received a Global Assessment of Function ("GAF")[4] score of 40 on three separate occasions. R. at 683 (March 20, 2014), R. at 741 (January 15, 2015), R. at 743 (September 11, 2015).

---

[4]"Clinicians use the GAF scale, devised by the American Psychiatric Association and ranging from zero to one hundred, to indicate an overall judgment of a person's psychological, social, and occupational functioning." *Delk v. Colvin*, No. 2:14-CV-505, 2015 WL 13021474, at *3 (E.D. Va. Apr. 16, 2015), report and recommendation adopted, No. 2:14CV505, 2015 WL 13022032 (E.D. Va. May 15, 2015), *aff'd*, 675 F. App'x 281 (4th Cir. 2017) (citing Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR) 34 (4th ed. 2000)). *See also Sizemore v. Berryhill*, 878 F.3d 72, 82 (4th Cir. 2017) ("[T]he fourth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") included a Global Assessment of Functioning scale on which to 'consider[ ] and rate[ ] [an individual's] psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness,' with a higher score indicating an increased level of functioning. The more recent edition of the DSM, however, abandoned the use of GAF scoring, noting 'its lack of conceptual clarity' and 'questionable psychometrics in routine practice.' After the DSM-V was published, the Social Security Administration issued a directive to its ALJs in July 2013, instructing them to still consider GAF scores as medical opinion evidence but emphasizing that GAF scores should not be considered in isolation." (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 16 (5th ed. 2013)). Here, the ALJ specifically rejected Plaintiff's GAF assessments, and "accorded little evidentiary weight." R. at 20 (finding "this rating is just a snapshot of function and does not adequately portray [Plaintiff's] abilities.").

Since March 2014 to the present, Plaintiff continues to receive regular psychiatric treatment, prescription management, and counseling from Dr. Leone. On May 22, 2014, during a reassessment with Dr. Leone, Plaintiff reported that taking Risperdal had decreased the intensity of her audio-visual hallucinations, but she complained of mood swings. R. at 653. Plaintiff returned to Dr. Leone on July 14, 2014 at which time Plaintiff expressed that although her father had recently passed away, she was "doing well." R. at 656. Plaintiff reported that she was struggling with housing stability, alternating between staying with a friend in exchange for babysitting and cleaning the house, and living in her vehicle. R. at 656. She also reported that she had been experiencing audio and visual hallucinations and admitted that she was not regularly taking her medication. R. at 656. In July 2014, Plaintiff was approved to attend therapy sessions at the Psychosocial Rehabilitation Beach House ("Beach House") where Plaintiff could receive mental health services including learning coping skills to decrease and manage her mental health symptoms. R. at 623, 652, 669. Throughout the fall of 2014, Plaintiff's attendance at Beach House therapy sessions was spotty, but by late December 2014, Plaintiff's attendance had improved markedly. R. at 669-70, 674.[5] During a December 22, 2014 visit with Dr. Leone, Plaintiff reported that she was no longer homeless, was sleeping well, was taking her medication as prescribed and no longer suffered from audio-visual hallucinations. R. at 672-73. On February 10, 2015, Plaintiff presented for a scheduled follow-up appointment and reported that she was taking her medication, "doing well," and denied any psychotic symptoms. R. at 676. Plaintiff saw Dr. Leone on March 2, 2015 and denied mood swings or issues with anger, depression, or anxiety, but on examination reported that she occasionally experienced "tolerable" auditory hallucinations manifesting as a stray voice calling her. R. at 678. A mental

---

[5] Due to a January 2015 bedbug infestation at Plaintiff's residence, Plaintiff was not permitted to attend Beach House sessions until the infestation was cleared. However, upon being cleared to return, Plaintiff resumed regular session attendance. R. at 676.

health status examination was performed on June 19, 2015 at which time Plaintiff's judgment was rated as fair but her thought content was rated as unreasonable. R. at 699. On August 18, 2015, Plaintiff saw Dr. Leone and again reported auditory hallucinations (the voice of a recently deceased family member) and Dr. Leone noted that Plaintiff "[d]oes display an inappropriate giggle when relaying" such information. R. at 727. On September 11, 2015, Dr. Leone completed a Medical Source Statement on behalf of Plaintiff which included the opinion that although Plaintiff was compliant with medication, and not a malingerer, Plaintiff continued to experience symptoms, including but not limited to visual or oral hallucinations and delusional thinking. R. at 743. This Medical Source Statement also included Dr. Leone's opinions that Plaintiff suffered from "marked" levels of impairment in her ability to "carry out short/simple instructions," "maintain concentration/focus," "make simple decisions," "get along with supervisors," "respond to changes in routine," and "deal with normal work stress." R. at 744. Dr. Leone estimated that due to her mental health issues, Plaintiff would need three unscheduled breaks of at least fifteen minutes in a forty hour work week and would be absent from work more than four days a month. R. at 744.

On or about January 24, 2014, after an initial evaluation and reconsideration, a state agency physician reviewed Plaintiff's medical records and found that Plaintiff suffered from no medically determinable mental health impairment. R. at 96. Plaintiff notes that because she did not seek mental health treatment until nearly a month afterwards, on March 11, 2014, the state agency did not have a medical expert or consulting physician review the file or form an opinion as to Plaintiff's level of mental health function. ECF No. 12 at 5. Accordingly, Plaintiff contends that because Dr. Leone was the only physician to evaluate Plaintiff's mental health and to render medical source opinion support, Dr. Leone's findings regarding Plaintiff's mental

6

health function remain unrebutted.  ECF No. 12 at 9 n.6.  The Commissioner specifically disputes this contention, arguing that in January 2014, the state agency psychologist reviewed Plaintiff's mental health records to determine that Plaintiff did not suffer from any medically determinable health impairment.  R. at 95 ("[Plaintiff] is not able to identify who diagnosed her with depression and she is not on medication or in treatment for this condition. She has never been treated or hospitalized for a psychiatric impairment.  There is no medically determinable mental health impairment in file.").    The Commissioner also notes that the consultative examiner's June 8, 2013 evaluation of Plaintiff included a mental status examination during which the examiner concluded that Plaintiff was "alert and oriented x3" and "[a]ttention span and concentration normal."  R. at 322.

At the administrative hearing before the ALJ, Plaintiff supplemented the factual record and testified that although she had only recently began receiving treatment for her mental health problems, she had experienced them for "[a] long time, since I was twelve," and that the severity of the symptom manifestation fluctuated, compounded by the fact that when she was young, Plaintiff reported the symptoms to her family but "they never believed it." R. at 54-55.  Plaintiff also testified that when she takes her medication as prescribed, the visual hallucinations subside, but she continues to hear things, though she is unsure whether the sounds are real or imagined. R. at 42-44.  Plaintiff also confirmed her past work experience to include cleaning offices at Redcoats, babysitting, housekeeping, and as a child care assistant teacher.  R. at 35, 37-39, 49.

When presented with a hypothetical assuming the same age, education, and work background as Plaintiff, capable of medium work that did not require more than occasional postural activities, no more than occasional contact with coworkers, supervisors, or the general public, performing only simply, repetitive and routine tasks, the VE testified to the wide

7

availability of medium unskilled work such as hand packager and laundry laborer and of light unskilled work as cafeteria attendant and assembler. R. at 56-57. The ALJ also presented a second hypothetical, asking the VE to credit Dr. Leone's assessment, by assuming the "marked" limitations on categories as offered by Dr. Leone's Medical Source Statement, R. at 744, to determine whether any one of the markedly limited categories and need for unscheduled breaks and absences from work would preclude full time employment entirely, to which the VE answered affirmatively, R. at 57-58.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Acting Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Acting Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity)).

8

"An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability.   Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law. First the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 20, 2014, the amended alleged onset date. R. at 15, 39.  Second, the ALJ determined that Plaintiff's fibromyalgia syndrome, bilateral knee disorder, psychosis, mood disorder, and anxiety disorder qualified as severe impairments under 20 C.F.R. § 416.920(c) because they limit Plaintiff's abilities to perform basic work activities. R. at 15.  Furthermore, the ALJ specifically found that Plaintiff's alleged impairments of asthma and hand cramps were not severe impairments because they had not lasted for a period of twelve months, are responsive to medication, do not require any significant medical treatment, and do not result in any continuous vocational, exertional, or non-exertional limitations. R. at 15-16.

Third, the ALJ determined that evidence failed to show that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P Appendix 1. R. at 16.  With respect to Plaintiff's mental impairments, the ALJ applied the "Paragraph B" criteria found that Plaintiff suffered moderate, but not marked, restrictions or limitations.  He found that in the activities of daily living, Plaintiff experienced only moderate restriction because she was able to shop in stores with the assistance of others, read, watch television, and clean her room. R. at 16.  The ALJ found that in social functioning, Plaintiff had moderate difficulties based on her testimony that she cannot go out alone because she feels as though she is being watched, feels "crowded" around other people,

9

and spends a lot of time by herself in her room. R. at 16. Regarding Plaintiff's concentration, persistence, and pace, the ALJ found that Plaintiff has moderate difficulties because of her reported auditory and visual hallucinations, as well as her confusion, paranoia, and difficulty paying attention for extended periods of time, as well as Plaintiff's testimony that she does not follow written instructions well and spoken instructions confused her. R. at 16. The ALJ found that Plaintiff experienced neither episodes of decompensation of an extended duration nor an increase of symptoms that resulted in significant alterations in medication or the need for a more structured psychological support system. R. at 16-17.

The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 404.1567 and 416.967(c), subject to several moderate limitations. R. at 17. Such limitations include performing no more than occasional postural activity and no more than occasional contact with co-workers, supervisors, and/or the general public, due to limitations in social functioning, and performing only simple, routine, and repetitive tasks due to limitations in Plaintiff's concentration, persistence, or pace. R. at 17 ("With regard to concentration, persistence, or pace, [Plaintiff] has moderate difficulties."). In arriving at this RFC, the ALJ rejected the categories of "marked" limitations offered by Dr. Leone and presented to the VE, finding such restrictions were not supported by the evidentiary record, and ultimately rejecting the medical opinion of Dr. Leone. R. at 20 ("This opinion is only partially supported by progress notes, which reflect [Plaintiff's] subjective complaints. However, based on clinical observations, and the conservative level of treatment rendered, the opinion is accorded little evidentiary weight.") (citing SSR 96-2P, 1996 WL 374188 (July 2, 1996)).

Fourth, the ALJ determined that Plaintiff was not able to perform past relevant work as a housekeeper and childcare provider because such positions exceeded the demands of the Plaintiff's established RFC. R. at 20-21.

Finally, the ALJ found that work existed in significant numbers in the national economy for Plaintiff based on her age, limited education, ability to speak English, work experience, and residual functional capacity. R at 16. Such available jobs included medium unskilled positions of hand packager and laundry laborer, and light unskilled positions such as cafeteria attendant and assembler. R. at 21.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial

11

evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

## V. ANALYSIS

In her summary judgment motion, Plaintiff raises a single issue: whether substantial evidence supports the ALJ's findings regarding Plaintiff's RFC, and specifically whether the ALJ failed to properly account for Plaintiff's mental health impairments and their limitations on Plaintiffs concentration, persistence or pace in light of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). *See* ECF No. 12 at 6. Here, the ALJ determined that Plaintiff had a "moderate" impairment in concentration, persistence, or pace, R. at 16, but addressed such a limitation in the RFC by simply stating that Plaintiff "can perform only simple, routine, repetitive tasks, due to limitations in concentration, persistence, or pace," R. at 17. According to Plaintiff, the ALJ's use of "boilerplate" language was insufficient, in light of Plaintiff's documented significant mental health impairments. ECF No. 12 at 7. The Court agrees. In *Mascio*, the Fourth Circuit joined other circuits in holding that merely presenting a hypothetical limiting a claimant to simple, routine tasks or unskilled work, without more, will not account for moderate limitations in concentration, persistence, or pace. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The rationale underlying this conclusion is well-founded: "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). Consequently, the *Mascio* Court explicitly held that a limitation to simple, routine tasks and unskilled work does not adequately account for limitations in concentration, persistence, or pace. *Mascio*, 780 F.3d at 638 ("[A]n ALJ does not

account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.") (quotations omitted).  Where such explanation is insufficient, remand is appropriate.  *Id.* ("But because the ALJ here gave no explanation, a remand is in order.").  To be sure, in situations where the claimant's limitations in concentration, persistence, or pace do *not* affect a claimant's ability to work, no such explanation is required.  *Gaines v. Colvin*, No. 2:15CV549, 2016 WL 7974067, at *10 (E.D. Va. Dec. 22, 2016), report and recommendation adopted, No. 2:15-CV-549, 2017 WL 342054 (E.D. Va. Jan. 23, 2017) ("Although *Mascio* does not create a per se rule of remand under these circumstances, the holding does require an explanation of why such limitations were not included in the RFC.").  This is not the case in the instant matter.

Here, when considering the medical records and Plaintiff's testimony, the ALJ identified that certain limitations existed for Plaintiff, and even incorporated such limitations into the hypotheticals presented to the VE, yet failed to explain how Plaintiff's performance of a simple, routine, or repetitive task ameliorates Plaintiff's mental health issues and the limitations caused thereby.  *See* R. at 21 (finding that Plaintiff's "ability to perform all or substantially all of the requirements at this level of work has been impeded by additional limitations" which "erode the unskilled medium occupational base").  Rather, "[u]nder *Mascio*, the ALJ's failure to explain why the moderate limitation at step three did not translate into a limitation in the RFC necessitates remand. . . . On remand, the ALJ needs to explain whether and how [Plaintiff] could perform light [or medium] work *despite* [her] moderate mental limitations, and do so in a way that is reviewable by the Court." *Gaines v. Colvin*, No. 2:15CV549, 2016 WL 7974067, at *11 (E.D. Va. Dec. 22, 2016), report and recommendation adopted, No. 2:15-CV-549, 2017 WL

342054 (E.D. Va. Jan. 23, 2017) (citing *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)) (emphasis added).

Dr. Leone opined that due to her mental health issues, Plaintiff exhibited several "marked" (as opposed to "moderate") limitations in various categories, including the ability to carry out short/simple instructions, maintain concentration/focus, make simple decisions, get along with co-workers, respond to changes in routine and deal with normal work stresses, and would likely require unscheduled absences and breaks. R. at 743-44. Despite being the only physician who specifically evaluated Plaintiff's mental health issues and the limitations (if any) created by such issues, the ALJ rejected Dr. Leone's opinions because they were "only partially supported by progress notes, which reflect [Plaintiff's] subjective complaints." R. at 20. While the progress notes do reflect Plaintiff's subjective complaints, they also reflect aberrational behaviors, such as visual and auditory hallucinations ("During orientation the client appeared to be responding to internal stimuli." R. at 692) and sleeping in a storage unit (R. at 622). As a consequence of her mental illness, Plaintiff has been treated with powerful psychotropic medications, such as lithium and Risperdal. Thus, the ALJ's rationale for discounting Dr. Leone's opinion is not adequately explained in light of his crediting of Plaintiff's psychiatric diagnoses and finding that her concentration, persistence and pace were moderately impaired because of it.

The Commissioner argues that to the extent Plaintiff's reported symptoms do not specifically include an inability to concentrate, keep pace, or sustain a particular task, the reported symptoms that might cause such limitations manifested in time periods when Plaintiff was either not receiving mental health treatment or was noncompliant with treatment (to include failing taking her medication as prescribed), and that the ALJ properly addressed Plaintiff's

symptoms and concluded that her condition improved when Plaintiff complied with the prescribed medication regime. ECF No. 14 at 20. The Court does not find this argument persuasive, especially in light of the reasons why the ALJ found Plaintiff's concentration, persistence, and/or pace are impaired: Plaintiff's psychosis and continued auditory hallucinations even when she took the medication as directed. *See e.g.*, R. at 678 (reporting occasional "tolerable" auditory hallucinations manifesting as a stray voice calling her during a March 2, 2015 follow-up with Dr. Leone). *See also* R. at 16 (citing confusion, paranoid, difficulty paying attention for extended periods, difficulty following written instructions, and confusion from spoken instructions). Additionally, the Commissioner argues that the ALJ correctly found that Plaintiff was not as limited as she claimed to be because Plaintiff's subjective reports were inconsistent with Plaintiff's own self-reports, citing as an example, Plaintiff's self-reported ability to drive a car, work on puzzles, and manage a savings account. ECF No. 14 at 20. The Commissioner also states that "[w]hen asked to identify her limitations, Plaintiff focused on her physical limitations exclusively and did not indicate any issues with memory, completing tasks, concentration, understanding or following instructions." ECF No. 14 at 20 (citing R. at 255-57). This assertion is belied by the record, and specifically, by one of the pages to which the Commissioner cites in support of this very assertion. *See* R. at 257. For example, in response to the question "[f]or how long can you pay attention?", Plaintiff responded "short time." Plaintiff checked the "no" box in response to "[d]o you finish what you start?". When asked "[h]ow well do you follow written instructions?" Plaintiff answered "Not well enough." Plaintiff indicated that most of the time spoken instructions confused her. R. at 257. The Court cannot find that the ALJ's decision to deny Plaintiff's benefits is supported by substantial evidence, in light of the failure to sufficiently explain the relation between Plaintiff's moderate limitations (as identified

by the ALJ) in concentration, persistence and pace and Plaintiff's ability to actually complete tasks deemed within her RFC by the ALJ. The Court cannot review what the ALJ does not explain.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 11, be **GRANTED**, that the Commissioner's Motion for Summary Judgment, ECF No. 13, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED** for proceedings and analysis consistent with this Report.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S.

16

140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
January 17, 2018

17